UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case No.:

BEATRIZ SANTAMARIA
    Plaintiff(s),

vs.

CERVERA REAL ESTATE, INC.
    Defendant(s).

_____/

## COLLECTIVE ACTION COMPLAINT

Plaintiff, Beatriz Santamaria, on behalf of herself and all others similarly situated, hereby sues Defendant, CERVERA REAL ESTATE, INC., for violations of the Fair Labor Standards Act of 1938 ("FLSA"). As grounds, Plaintiff states as follows:

### INTRODUCTION

1. This case presents yet another attempt by an employer to evade the mandatory minimum wage and overtime provisions of the FLSA by improperly designating its core revenue-generating employees as independent contractors. As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally

misclassified as a means to cut costs and avoid compliance with labor laws.[1]

As alleged in more detail below, that is exactly what Defendant is doing in this case.

2. The core harms for which this case seeks redress arise from unpaid minimum wage and overtime under the FLSA.[2] Congress designed the FLSA to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action within the FLSA, are intended to prevent employers from pilfering the wages rightfully earned by their employees.[3]

3. This case implicates a real estate sales company Defendant "CERVERA REAL ESTATE, INC;" an international company engaged in real estate sales, marketing, finance, and development, with operations throughout the United States, and internationally.

4. Defendant has a longstanding policy of misclassifying its employees as purported independent contractors. In doing so, Defendant required and/or permitted Plaintiff, and others similarly situated, to work as realtors on their property in excess of forty (40) hours per week but refused to compensate them at the applicable minimum wage and overtime rates. In fact, Defendant **refused to compensate Plaintiff at all** for the hours she and others like her worked. These realtors' only

---

[1] *See* DOL Admin. Interp. No. 2015-1, at http://www.dol.gov/whd/workers/Misclassification/AI- 2015_1.pdf; *see also Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1323 (11th Cir. 2015) (reversing summary judgment on claims brought by delivery drivers under the Florida Deceptive and Unfair Trade Practices Act for actual damages sustained from their improper classification as independent contractors when they were, in fact, employees).

[2] Plaintiff has provided written notice to Defendant of her intention to pursue additional state law claims in this matter, including under Article X, Section 24 of the Florida Constitution (the "Florida Minimum Wage Act"). Plaintiff intends to amend this Complaint to assert said claims after the applicable notice period expires.

[3] *See Billingsley v. Citi Trends, Inc.*, 560 Fed. Appx. 914 (11th Cir. 2014).

compensation was in the form of a "draw" or advance on sales commissions that realtors were required to pay back to Defendant.

## The Parties, Jurisdiction and Venue

5.      Plaintiff is a former salesperson who was employed by Defendant and, therefore, she has first-hand personal knowledge of the pay violations at alleged in this case.

6.      The FLSA Class Members are all of Defendant's current and former salespersons who worked for Defendant at any time during the three years prior to the filing of this Complaint up to the present.

7.      Defendant CERVERA REAL ESTATE, INC., is a domestic corporation doing business in Florida for the purpose of accumulating monetary profit. This Court has personal jurisdiction over Defendant because, among other reasons, its principal place of business is located in Miami-Dade County, Florida.

8.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9.      Venue is proper in the United States District Court for the Southern District of Florida, because a substantial portion of the events forming the basis of this suit occurred in this District and Defendant is located in this Judicial District. In particular, Defendant's principle place of business is located in Miami-Dade County, Florida.

## Factual Background

10.     At all times material, Defendant was an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

11.     At all times material, Defendant was an enterprise engaged in commerce or in the

production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it had employees engaged in commerce and whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) under 29 U.S.C. § 203(s)(1).

12. At all material times, Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

13. At all times Defendant was an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

14. Defendant is an international company engaged in real estate sales, marketing, finance, and development, with operations throughout the United States, and internationally. During the relevant time period alleged herein, Defendant has employed hundreds of individuals throughout the as salespersons, including Plaintiffs.

15. Plaintiffs were paid on a commission-only basis when they worked for Defendant as salespersons.

16. Plaintiffs were not paid a salary when they worked for Defendant as salespersons.

17. Plaintiffs were not paid an hourly rate when they worked for Defendant as salespersons.

18. Plaintiffs were misclassified as "exempt" workers under the FLSA when they worked for Defendant as salespersons.

19. At no time did the Plaintiffs job duties require them to perform work customarily and regularly away from their main sales offices. In fact, nearly all key sales activity relating to the duties and responsibilities of the Plaintiffs employment with Defendant took place at Defendant's main sales offices. Therefore, Plaintiffs performed "inside" sales work for Defendant.

20. As salespersons, Plaintiffs were responsible for selling new homes built by Defendant. Plaintiffs worked from a Defendant home sales office ("sales office") within a community under development. In a typical week, Plaintiffs spent over 90% of their normal workday in the sales office.

21. Plaintiffs conducted their day-to-day business operations as a salesperson from a Defendant sales office.

22. A Defendant sales office used by its salespersons is a typical business office containing a desk, telephone, computer, printer, internet access, file cabinets, various sales forms and other sales materials, an executive chair and chairs for customers to sit across from the salesperson's desk.

23. Plaintiffs were falsely classified as exempt for purposes of overtime and were denied overtime compensation and guaranteed minimum wages.

24. Plaintiffs were required to report to work at a Defendant sales office where their day-to-day business operations as a salesperson were conducted.

25. Plaintiffs rarely left the sales office to show prospective home buyers "spec" houses and vacant lots. In the limited instances in which Plaintiffs did so, they were typically gone no more than fifteen to twenty minutes, within the development where the sales office was located. There were many weeks during which Plaintiffs never left the sales office to show a prospective home buyers "spec" houses and vacant lots. Overall no more than 2.5% of the Plaintiff 40 hour work week was spent outside the home sales office.

26. Being absent from the sales office could result in discipline of a salesperson, including termination.

27. In some work weeks during the relevant time period, Plaintiffs worked more than 40 hours per work week while working as a salesperson.

28. During the relevant time period, Defendant's sales office was open at least 8 hours each day Monday through Sunday.

29. Plaintiffs were required to work 5 days each week.

30. Plaintiffs' marketing activities with real estate agents and brokers were conducted primarily by email and telephone from the sales office.

31. During the relevant time period, Defendant held marketing events at the sales offices to which real estate agents and brokers were invited. Salespersons were required to attend these marketing events.

32. All contracts for sale of new homes that Plaintiffs obtained were entered into in the sales office.

33. As a salesperson, Plaintiffs performed a great deal of paper work in the sales office each day.

34. All of the critical or indispensable components of Plaintiffs' overall sales activities took place within the model home sales office.

35. Plaintiffs were provided with a layout in the sales offices showing the location of each available lot and home within the community, as well as the location of the other amenities in the community, such as the community pool. Plaintiffs were trained and required to use this layout with potential customers in the sales office to explain the location of any available home or lot within the community, as well as any amenities near the available home or lot.

36. Plaintiffs typically spent at least 4 or 5 hours per week performing additional work that was unrelated to their own sales or solicitations.

37. As a salesperson, Plaintiffs spent several hours each day on the telephone in the sales

office.

## Collective Action Allegations

38.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

39.     Defendants' business operations, and the job duties, working conditions, wages and compensation of Plaintiffs are substantially similar, if not identical, at all of Defendants' locations throughout the country.

40.     Other employees have been victimized by this pattern, practice, and policy of the Defendants that is in violation of the FLSA. Plaintiffs are aware that the illegal practices and policies of Defendants have been imposed on other workers.

41.     The collective action consists of current and former individuals who worked for Defendants or their subsidiaries or divisions, who during the relevant time period were misclassified as exempt and were not paid minimum wages and/or overtime compensation at time and one half for hours they worked over 40 in a week in violation of the FLSA and whose job duties included performing sales and marketing of newly constructed homes from a sales office.

42.     Plaintiff shared common job duties and responsibilities as salespersons. Thus, Plaintiff's experiences are typical of the experience of Defendants' other salespersons.

43.     Plaintiffs file this case as an "opt-in" collective action as specifically allowed by 29 U.S.C. §216(b).

44.     Plaintiffs request that Defendants fully identify all others similarly situated in order that proper notice of their right to consent to participation in this collective action may be distributed, including immediately providing the name, last known address, telephone number dates of employment, and job title(s) of all those similarly situated so that notice may be sent to those persons immediately.

45. Plaintiffs seek to represent those similarly situated who have provided consent in writing to join this action as required by 29 U.S.C. § 216(b). These FLSA Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

46. Those individuals who choose to opt in will be listed on subsequent pleadings and copies of the written consents to sue will be incorporated herein by reference.

47. Plaintiffs bring these claims on their behalf and on behalf of all other similarly situated salespersons who have not been fully compensated for all work performed, time spent, and activities conducted for the benefit of Defendants.

48. Plaintiffs frequently performed work unrelated to sales of newly constructed homes for which they were not compensated.

49. The experiences of Plaintiff, with respect to her job duties, are typical of the experiences of the FLSA Class Members.

50. The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

51. All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

52. All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

53. Plaintiffs will fairly and adequately represent and protect the interests of those who are similarly situated.

54. Although the exact amount of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a formula. The claims of all the FLSA Class

Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all the FLSA Class Members.

55. As such, the FLSA Class of similarly situated Plaintiffs is properly defined as follows:

> Current and former employees who worked for Defendant or its subsidiaries, who at any time in the three years preceding the filing of this suit through the present ("relevant time period") were misclassified as exempt and were not paid minimum wages and/or overtime compensation at time and one-half their regular rates of pay for hours they worked over 40 in a work week in violation of the FLSA and whose job duties included performing sales of newly constructed homes from Defendant's sales offices, with the job title of salesperson, sales counselor, sales manager, sales associate, or any other similar title who were paid as commissioned, exempt employees or independent contractors (referred to herein as a "salesperson" or "salespersons").

## COUNT I
(Violations of the FLSA)

56. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

57. Plaintiff was employed by the Defendant as a salesperson from approximately July of 2017 to March of 2018.

58. Plaintiff was primarily assigned to the Defendant's "University Bridge Residences" real estate development project in located at 740 SW 109th Ave, Miami, FL 33174.

59. During this period Plaintiff worked an average of 50 hours a week, six days a week for the Defendant.

60. Defendant's practice of failing to pay Plaintiff and FLSA Class Members time-and-a half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Plaintiff and the FLSA Class Members.

61. Defendant's practice of failing to pay Plaintiff and the FLSA Class Members at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Plaintiff or the FLSA Class Members.

62. Defendants have not made a good faith effort to comply with the FLSA.

63. Each Defendant's conduct was willful within the meaning of 29 U.S.C. § 255(a).

64. In further violation of the FLSA, Defendants have failed to maintain accurate employee pay records, including the number of hours worked per work week, by Plaintiff and by all other similarly situated salespersons.

65. Defendants deliberately misclassified Plaintiff and all other similarly situated salespersons as exempt employees and independent contractors to avoid paying them overtime compensation.

66. No exemption excused the Defendants from paying Plaintiff and all other similarly situated salespersons minimum wages and/or overtime compensation, despite the fact that:

   a. Defendant set the Plaintiffs schedule;

   b. Defendant hired, fired, and supervised the Plaintiff;

   c. Defendant enforced a dress code for the Plaintiff;

   d. Defendant controlled the details of the Plaintiff work including their work schedule, procedures, and appointments;

   e. Defendant required Plaintiffs to attend weekly mandatory meetings;

   f. Defendant disciplined Plaintiffs for failing to attend mandatory meetings or not reporting to work on schedule;

67. Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice regarding overtime compensation owed to Plaintiffs and to all other similarly situated

salespersons.

68. Defendants knowingly failed to pay overtime to Plaintiffs in violation of the FLSA.

69. Defendants' conduct has been willful and in bad faith. Plaintiff and all others similarly situated are entitled to liquidated damages for such conduct.

70. Defendants' practice is to be deliberately indifferent to violations of overtime and/or minimum wage requirements.

71. Defendant failed to keep adequate records of Plaintiff and the FLSA Class Members' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c). Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a) The time of day and day of week on which the employees' work week begins;

b) The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c) An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d) The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e) The hours worked each workday and total hours worked each workweek;

f) The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g) The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h) The total additions to or deductions from wages paid each pay period including

   employee purchase orders or wage assignments;

i) The dates, amounts, and nature of the items which make up the total additions and deductions;

j) The total wages paid each pay period; and

k) The date of payment and the pay period covered by payment. 29 C.F.R. 516.2, 516.5.

72. Defendant has not complied with federal law and has failed to maintain such records with respect to Plaintiff and the FLSA Class Members. Because Defendant's records are inaccurate and/or inadequate, Plaintiff and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*¸ 328 U.S. 680, 687 (1946).

73. Plaintiff was a lawfully non-exempt employee and was improperly classified as an exempt employee and/or independent contractor.

74. Defendants have violated the FLSA by failing to pay Plaintiff and all other similarly situated salespersons minimum wages and/or overtime compensation at a rate of one and one half for all hours worked in excess of 40 hours per week.

75. Plaintiff hereby demands a trial by jury.

WHEREFORE Plaintiff and all those similarly situated to them who have or will opt into this action, respectfully requests that this Court follow the certification procedures of § 216 of the Fair Labors Standards Act and certify a collective action, and that subsequent thereto Plaintiffs and all others who opt-in to this action recover the following:

a) Designation of this action as a collective action on behalf of the FLSA Class Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an

  FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

a. an order preliminarily and permanently restraining and enjoining Defendants from engaging in the aforementioned pay violations;

b. damages and restitution for all unpaid wages (including fringe benefits and bonuses), unpaid overtime compensation (at time and one-half), and unpaid minimum wages and other injuries, as provided by the FLSA;

c. liquidated damages, as provided by the FLSA, equal to the sum of the amount of wages and overtime compensation that were not properly paid;

d. all applicable penalties for the violations set forth herein;

e. an award of reasonable attorney's fees, expenses, expert fees and costs incurred in vindicating the rights of Plaintiffs and all those similarly situated;

f. an award of pre-judgment and post-judgment interest at the highest rate permitted by law; and

g. such other and further relief, at law or in equity, as this Court deems just and appropriate.

## COUNT II
**(Federal (FLSA) Statutory Violation Pursuant to 29 U.S.C. 215 (a)(3))**

76. Plaintiff repeats and realleges paragraphs 1- 55.

77. Plaintiff was employed by the Defendant as a salesperson from approximately July of 2017 to March of 2018.

78. Plaintiff was primarily assigned to the Defendant's "University Bridge Residences" real estate development project in located at 740 SW 109th Ave, Miami, FL 33174.

79. During this period Plaintiff worked an average of 50 hours a week, six days a week for the Defendant.

80. Defendants willfully and intentionally refused to pay Plaintiff her legally owed wages as required by the laws of the United States and remain owing Plaintiff these wages as set forth above.

81. 29 U.S.C. § 206(a)(3) states that it shall be unlawful for any person "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in such proceeding . . . ."

82. The motivating factors, which caused Plaintiff's termination as described above, was her demand or complaint seeking the payment of unpaid overtime wages and compliance with the FLSA from Defendant. More specifically, Plaintiff made specific complaints to her supervisors at Defendant regarding the fact that she and other sales associates were being intentionally misclassified as independent contractors, not being paid overtime wages, and not being provided with mandatory meal breaks and rest periods.

83. Plaintiff further alleges that she complained to her supervisors regarding the FLSA violations alleged alleged herein on repeated occasions in the months leading up to her termination.

84. Ultimately, in March of 2018, in response to these complaints Plaintiff was terminated by the Defendant in retaliation for her complaints relating to unpaid wages and compliance with FLSA.

85. Plaintiff alleges that she would not have been terminated but for her complaints regarding these violations of FLSA.

86. At all times material Defendant's alleged reasons for terminating the Plaintiff were a pretext for terminating the Plaintiff as a result of her complaints which constituted protected conduct under FLSA.

87. Defendant's termination of Plaintiff was in direct violation of 29 U.S.C. § 215(a)(3) and, as a direct result, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Enter a judgment against the Defendants for all back wages from the date of discharge to the present date and an equal amount of back wages as liquidated damages, attorneys' fees, costs, and;

b. Order reinstatement and promotion and injunctive relief prohibiting the Defendants from discriminating in the manner described above, emotional distress and humiliation, and pain and suffering, front wages, as well as other damages recoverable by law under 29 U.S.C. § 216(b).

## COUNT III
(Breach of Oral Contract)

88. Plaintiff repeats and realleges paragraphs 1-37.

89. Pursuant to 28 U.S.C. section 1367(a), this Court has supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim. *See Geter v. Galardi S. Enterprises, Inc.*, 43 F. Supp. 3d 1322, 1329 (S.D. Fla. 2014) (*quoting "Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir.1997)).

90. In the alternative as permitted pursuant to Federal Rule of Civil Procedure 8(a)(3), the Plaintiff alleges as follows:

91. At all times material beginning from July of 2017 to March of 2018, Plaintiff entered into an oral contract with Defendant the terms of which Plaintiff would market and sell real estate located at the Defendant's "University Bridge Residences" real estate development project in located at 740 SW 109th Ave, Miami, FL 33174. In exchange, Defendant agreed to pay the Plaintiff a commission from these sales and reimburse her for any expenses.

92. Pursuant to this agreement the Plaintiff marketed and sold real estate on behalf of Defendant and therefore was entitled to be paid commissions from these real estate sales and reimbursed for the expenditures she incurred in effectuating these sales.

93. At all times material the term established by the parties for the performance of this oral agreement was a time period of less than one year.

94. On or about March of 2018 Defendant breached this agreement by failing to pay Plaintiff owed commissions.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for all damages which naturally resulted from its breach of contract, including costs and prejudgment interest.

## COUNT IV
(Unjust Enrichment)

95. Plaintiff repeats and realleges paragraphs 1-37.

96. Pursuant to 28 U.S.C. section 1367(a), this Court has supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim. *See Geter v. Galardi S. Enterprises, Inc.*, 43 F. Supp. 3d 1322, 1329 (S.D. Fla. 2014) (*quoting Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir.1997)).

97. In the alternative as permitted pursuant to Federal Rule of Civil Procedure 8(a)(3), the Plaintiff alleges as follows:

98. At all times material from July of 2017 to March of 2018, Plaintiff conferred a benefit on the Defendant in that she marketed and sold real estate for Defendant for its "University Bridge Residences" real estate development project in located at 740 SW 109th Ave, Miami, FL 33174; for which Defendant received monetary compensation

99. Therefore, Plaintiff conferred a benefit on Defendant which Defendant voluntarily accepted.

100. Defendant failed to compensate Plaintiff for conferring this benefit onto Defendant, and it would be inequitable for defendant to retain the value of Plaintiff's services without paying the Plaintiff.

101. Therefore, Defendant has been unjustly enriched, and Plaintiff is entitled to be compensated the reasonable value for her services.

WHEREFORE, Plaintiff requests that this Court enter judgment in Plaintiff's favor for the amount in which Defendant was unjustly enriched and all other damages available under Florida law.

CERTIFICATE OF SERVICE

      I hereby certify that on January 4, 2019, a true copy of the foregoing was served by CM/ECF E-service and/or process server on all Defendant and/or counsel or parties of record on the service list:


By:

FLORIDA LEGAL, LLC
Attorneys for Plaintiff
261 N.E. 1st Street
Suite 502
Miami, FL 33132
(t) (305) 901-2209
(f) (786) 870-4030

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law